IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 3:18-cr-489-RAH |
| | ) | |
| ROYZELL LIGON | ) | |

**MEMORANDUM OPINION and ORDER**

Defendant Royzell Ligon was charged on November 29, 2018, in an indictment with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g)(1) and two counts of possession of a controlled substance in violation of 21 U.S.C. § 844(a). On September 16, 2020, he filed a motion to suppress "all tangible and testimonial evidence recovered" as a result of the seizure. (Doc. 96.) Claiming the officers had neither reasonable suspicion nor probable cause to detain or seize him for the purpose of investigation or interrogation, Ligon contends that all evidence seized and statements made should be suppressed because the search violated the Fourth Amendment to the United States Constitution.

After an evidentiary hearing, the Magistrate Judge recommended the Court deny the Motion to Suppress Evidence. (Doc. 116.) On December 18, 2020, Ligon filed Objections to the Report and Recommendation of the Magistrate Judge. (Doc. 118.) Upon an independent and *de novo* review of the record, including a review of the transcript, as well as video footage and other evidentiary materials presented

during the hearing before the Magistrate Judge, and for the reasons that follow, the Court concludes that the Objections are due to be OVERRULED and the Motion to Suppress is due to be DENIED.

## I. STANDARD OF REVIEW

When a party objects to a Magistrate Judge's Report and Recommendation, the district court must review the disputed portions of the Recommendation *de novo*. 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify the recommendation; receive further evidence; or resubmit the matter to the magistrate judge with instructions." FED.R.CRIM.P. 59(b)(3).

*De novo* review requires the district court to independently consider factual issues based on the record. *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990). "Although *de novo* review does not require a new hearing of witness testimony, *United States v. Raddatz,* 447 U.S. 667, 675–76, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980), it does require independent consideration of factual issues based on the record." *Id.* If the Magistrate Judge made findings based on witness testimony, the district court must review the transcript or listen to a recording of the proceeding. *Id.* The Court has reviewed the transcript of the suppression hearing in its entirety and the available video footage.

## II.  DISCUSSION

The Magistrate Judge provided a thorough recitation of the facts in his Recommendation.  Consequently, a summary of the facts related to the Motion to Suppress is not necessary, as the Court adopts the Magistrate Judge's findings of facts, with a few minor exceptions, as set forth in the Recommendation.

### A. Public Intoxication and the Roadway

Ligon objects to the Magistrate Judge's determination that the officer had reasonable suspicion to believe that he had committed the crime of public intoxication.  He also objects to the finding that he was walking in the "middle" of the road.  Ligon asserts that he was walking in the roadway because there was no sidewalk, and alongside the road was a ditch, parked cars, and/or private property. (Doc. 118, at 12.)

The Court has reviewed Officer Griffin's patrol car video. (Gov's Ex. 1.)  The video shows Ligon walking in a straight line on a public street in the dark while wearing black clothing and carrying a bottle. (*Id.*, 20:26:19.)  As the patrol car approached him, Ligon walked over to the side of the road and waited for the car to pass. (*Id.*)  When the patrol car approached him again, Ligon was walking on the same street about a foot away from a couple of cars parked along the side of the street.  (*Id.*, 20:27:50.) Thus, it is arguable Ligon was not walking in the "middle"

of the street. Nonetheless, the Magistrate Judge's finding that Ligon was walking in the street in the dark with black clothing and a bottle is an accurate representation of the evidence.

The Court recognizes that Officer Griffin testified that he approached Ligon and asked him identifying questions for the purpose of determining whether he was the murder suspect and not necessarily because he believed he was intoxicated. (Doc. 115, at 23.) The Court, however, has also reviewed Officer Griffin's body camera video. During the initial encounter with Ligon, Officer Griffin commented, "I didn't know if it was a beer in your hand" and told him that, after seeing the bottle, he knew it was not a beer. (Gov.'s Ex. 2.) Nonetheless, Ligon later asked if he should pour out his drink and told Officer Griffin there were "two shots" in the bottle. (*Id.*) Upon review of all the evidence, including the transcript and the audiovisual recordings, the Court concludes that, to the extent the Magistrate Judge found that, over the course of their encounter, Officer Griffin developed reasonable suspicion to believe Ligon was publicly intoxicated, the Magistrate Judge's determination is supported by the record. The Court agrees with the Magistrate Judge's final determination.

### B. Characteristics

Ligon objects to the Magistrate Judge's finding that Officer Griffin

"commented" that he (Ligon) and the murder suspect, Moses Edwards, had similar skin tones, facial features, and haircut. Specifically, he argues there was no mention of facial features in the audiovisual recording on the officer's body camera. Nonetheless, as acknowledged by Ligon, Officer Griffin testified at the suppression hearing that his impression was that Ligon and the murder suspect were the "same height, same build, same complexion, same facial hair, almost same haircut." (Doc. 118, at 3.) Ligon, however, argues the video evidence shows that the only consistent features mentioned by Officer Griffin were that both Ligon and the suspect were the same height and color/complexion. (*Id*.)  Although there is no mention of specific facial features in the recording, Officer Griffin testified that his impression was that the suspect's and Ligon's complexions and facial hair were similar. Moreover, the fact that Officer Griffin's thoughts were not specifically articulated during the incident does not mean that he, or an objectively reasonable officer in his position, would not have noticed such similarities between Ligon and the suspect.[1] Consequently, to the extent the Magistrate Judge found that Officer Griffin's impression was that Ligon and the murder suspect had similar skin tones, facial features, and haircut, the Court adopts his finding.

---

[1] In his Recommendation, the Magistrate Judge notes that Officer Griffin testified that he was unable to recall whether he observed a photograph of the murder suspect before his initial contact with Ligon. (Doc. 116, at 2, n. 2.) From listening to Officer Griffin's statements in the body camera video, it is apparent that he had looked at a photograph of the murder suspect at some point prior to the encounter.

5

### C. The Mistaken Social Security Number

Ligon objects to the Magistrate Judge's finding that "[u]nbeknowndst to Officer Griffin, . . . he had incorrectly written down Defendant's social security number on his notepad." (Doc. 118, at 3, quoting Doc. 116, at 4.) Ligon argues that Officer Griffin knew at the outset that the number was incorrect. There is no dispute that Ligon corrected Officer Griffin when he first read the number back to him and before he initially entered the number into the computer system. This Court, however, has reviewed all of the evidence, including the audiovisual recording of Officer Griffin's body camera and Officer Griffin's testimony, and agrees there is sufficient evidence demonstrating Officer Griffin did not fully appreciate his mistake in transcribing the number until he again asked for his social security number and entered Ligon's information into the system for the second time. The Magistrate Judge's finding is due to be adopted.

### D. The Investigatory Stop and Arrest

Ligon asserts the investigatory stop began when he initially informed Officer Griffin that he did not wish to speak to him. He therefore contends that the Magistrate Judge erred in determining the *Terry* stop began at the moment Officer Griffin told him to "chill" next to his partner, Officer Guy.

The video demonstrates that, although Ligon initially said he did not want to

talk to Officer Griffin, Ligon continued talking to him. Moreover, as discussed by in the Recommendation, the officers did not use physical force or a showing of authority to restrain Ligon's movement early in the encounter. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (setting forth examples of circumstances where a reasonable person would not believe he was free to leave). Although the record clearly demonstrates Ligon told the officers he did not want to speak with him early in the encounter, the Court agrees with the Magistrate Judge's finding that the encounter did not become an investigatory stop until Officer Griffin told him to sit on the porch with the other officer.

Nonetheless, even assuming the investigatory stop occurred earlier, the Court agrees with the Magistrate Judge's determination that, when balancing the factors set forth in *United States v. Acosta*, 363 F.3d 1141 (11th Cir. 2004), the Government demonstrated that law enforcement pursued its investigation in a manner designed to lead to an efficient outcome, the police were diligent in pursuing their investigation, they immediately arrested him upon learning of an active warrant for his arrest, the scope and intrusiveness of the seizure was reasonable, and the duration of the investigation was reasonable.

More importantly, this Court agrees with the Magistrate Judge's determination that, assuming an unconstitutional investigatory stop occurred, the

attenuation doctrine is applicable in this case. In *Utah v. Strieff*, the Supreme Court considered how the attenuation doctrine applies where an unconstitutional *Terry* stop leads to the discovery of a valid arrest warrant. 136 S.Ct. 2056 (2016). The Court set forth the factors to consider when determining whether the attenuation doctrine applies to allow admission of evidence obtained following unconstitutional conduct:

> The three factors articulated in *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), guide our analysis. First, we look to the "temporal proximity" between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search. *Id.,* at 603, 95 S.Ct. 2254. Second, we consider "the presence of intervening circumstances." *Id.,* at 603–604, 95 S.Ct. 2254. Third, and "particularly" significant, we examine "the purpose and flagrancy of the official misconduct." *Id.,* at 604, 95 S.Ct. 2254.

Id., 136 S.Ct. at 2061-62.

The first factor, temporal proximity between the initial stop and search, favors the suppression. Similar to *Strieff*, Officer Griffin discovered the pistol and drug contraband only minutes after the initial stop. The remaining factors, however, weigh heavily in favor of the Government. In this case, the officers were conducting an investigation surrounding a murder and discovered Ligon had an outstanding warrant for possession of marijuana. As in *Strieff*, the outstanding warrant was valid, it predated Officer Griffin's investigation, and was entirely unconnected to the stop. Officer Griffin's arrest of Ligon "thus was a ministerial act that was independently

compelled by the preexisting warrant." *Id.*, 136 S.Ct. at 2063. Thus, the discovery of the unrelated warrant was an intervening circumstance. Finally, assuming *arguendo* that the stop was unlawful, there is nothing to indicate the officers' actions were flagrant or purposeful. Officer Griffin's reason for stopping and questioning Ligon was to investigate a murder. The Court finds no reason to discredit the officer's testimony. Thus, assuming any error occurred, "[t]he officer's decision to run the warrant check was [nothing more than] a 'negligibly burdensome precautio[n] for officer safety.'" *Id.* (quoting *Rodriguez v. United States*, 575 U.S. 348, ___, 135 S.Ct. 1609, 1616, 191 L.Ed.2d 492 (2015)). Furthermore, Officer Griffin's search of Ligon was a lawful search incident to arrest. *Strieff*, 136 S.Ct. at 2063 (quoting *Arizona v. Gant*, 556 U.S. 332, 339 (2009)). Consequently, even assuming Ligon was subjected to an unconstitutional investigatory stop and seizure, the evidence found on Ligon is admissible under the attenuation exception to the Fourth Amendment's exclusionary rule.

Based on the foregoing, the Court concludes that Ligon's objection to the Magistrate Judge's conclusion that the Motion to Suppress should be denied is due to be overruled.

### III. CONCLUSION

For the reasons as stated, the Court concludes that the Motion to Suppress Evidence is due to be denied. Accordingly, it is

ORDERED as follows:

1. The Defendant's Objections (Doc. 118) are OVERRULED;

2. The Recommendation of the Magistrate Judge (Doc. 116) to deny the Motion to Suppress is ADOPTED; and

3. The Defendant's Motion to Suppress (Doc. 96) is DENIED.

DONE, this 28th day of December, 2020.

                                       /s/ R. Austin Huffaker, Jr.
                                     R. AUSTIN HUFFAKER, JR.
                                     UNITED STATES DISTRICT JUDGE